# IN UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIDGETTE GORDON, ) | |
| ) | Case No. 1:21-cv-06653 |
| Plaintiff, ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| ILLINOIS MUNICIPAL RETIREMENT ) | |
| FUND, NICOLE FRISONE, in her official ) | |
| capacity, and PAMELA ARNDT, in her ) | |
| official capacity, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

NOW COMES Plaintiff, Bridgette Gordon, ("Gordon"), by and through her legal counsel, Pietrucha Law Firm, LLC, complaining of the Defendants, the Illinois Municipal Retirement Fund ("IMRF"), Nicole Frisone ("Frisone") and Pamela Arndt ("Arndt"), and alleges and states as follows:

### NATURE OF ACTION, JURISDICTION AND VENUE

1. The present action alleges claims based on violations of 42 U.S.C § 1981 ("Section 1981") and 775 ILCS 5 ("Illinois Human Rights Act").

2. This matter arises under federal law, and this Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

3. Additionally, this Court has jurisdiction over pendent state claims of Gordon against Defendant IMRF.

4. Venue is proper in the Northern District of Illinois because all relevant actions occurred within this district.

## PARTIES

5. Plaintiff Gordon is an unmarried, African-American female, and is a current employee of IMRF.

6. Defendant IMRF is a retirement and benefit fund that administers retirement, disability, and death benefits for employees of about 3,000 participating units of local government in Illinois, excluding the City of Chicago and Cook County.

7. Defendant Frisone is a married, white female, and was at all relevant times, employed by IMRF as IS Team Leader.

8. Defendant Arndt is a married, white female, and was at all relevant times, employed by IMRF as Manager – Enterprise Business Solutions.

## FACTS COMMON TO ALL COUNTS

9. For over 25 years, the IMRF has employed Gordon. She began working as a benefits specialist on or around April 4, 1994 with a rate pay at approximately $25/hour and over the years promoted to roles earning an increased annually salary of over $100,000/year.

10. By December 11, 2017, IMRF promoted Gordon to a Business Solutions Lead, a role that requires Gordon to facilitate communications between IMRF's business unit and the information technology unit.

11. In April 2018, IMRF underwent a reorganization and Frisone became Gordon's supervisor and Arndt became Gordon's area manager.

12. Frisone and Arndt were not used to working with a black employee and stereotyped Gordon as an "angry black woman", assuming that because Gordon was a black woman she would act overly emotional and disruptive even though Gordon was not overly emotional or disruptive.

13. By July 2018, Gordon was the only black employee in her unit. During meetings, Frisone refused to answer Gordon's questions and berated Gordon with open hostility.

14. Frisone and Arndt were aware that Gordon was an unmarried, single mother who financially supported her child, and planned to finish her career by retiring from IMRF in the coming years.

15. Suddenly, on October 22, 2018, IMRF disciplined Gordon with a final written warning ("FWW") alleging that Gordon had engaged in disruptive and unprofessional behavior, including but not limited to allegedly slamming her hand on a table during a meeting.

16. Upon information and belief, non-black employees who have actually been disruptive and unprofessional in IMRF's workplace have not received discipline as severe as a FWW.

17. Gordon complained about the FWW and indicated that the details within were factually inaccurate, but IMRF kept the FWW in place and encouraged Gordon to accept it. Gordon continued her attempts to discuss the matter and even submitted a detailed written account about the dispute.

18. By January 8, 2019, Gordon made an internal complaint to IMRF of unlawful discrimination and harassment. IMRF responded that Gordon made no specific allegations and then IMRF failed to investigate Gordon's allegations.

19. Shortly thereafter, on February 13, 2019, IMRF gave Gordon an unmerited low rating on a job performance review indicating Gordon was below IMRF's expectations on responding positively to direction given by management, and also below IMRF's expectations for interacting with others using respect.

20. IMRF also increased scrutiny of Gordon's overall job performance, fostered a hostile work environment and made Gordon's work more difficult.

21. Gordon filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). After the EEOC investigation closed, Gordon pursued a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR"), and on September 9, 2021, IDHR gave Gordon permission to commence a civil action. **See Exhibit A.**

22. Facing discharge on a FWW, Gordon accepted a demotion with lower pay, on a lower pay scale grade, a demotion which requires Gordon to perform almost the same duties in her prior role, and also required Gordon to train her non-black replacement who earns more than Gordon.

## COUNT ONE
## (Against All Defendants)

**Denial of Equal Rights under Section 1981 in violation of 42 U.S.C. § 1981**

23. Gordon repeats and realleges paragraphs 1 through 22 hereof, as if fully set forth herein.

24. Gordon is a racial minority who identifies as black.

25. Defendants possessed an intent to discriminate against Gordon on the basis of race.

26. The discrimination concerned one or more of the activities enumerated in Section 1981.

27. Contrary to Section 1981, Defendants denied Gordon, a person within the jurisdiction of the United States, the same rights enjoyed by white citizens when Defendants denied Gordon equal opportunity to enjoy the full and equal benefit of the law.

28. Although Gordon was qualified to perform her job duties, Defendants discriminated against Gordon on the basis of her race, and left Gordon with a reduced salary and reduced pension benefits.

29. Gordon was also denied a thorough investigation and response from human resources to her harassment and discrimination claims.

30. Gordon suffered damages as a result of Defendants' unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

31. Defendants intentionally violated Gordon's rights under Section 1981, with malice or reckless indifference, and, as a result, is liable for punitive damages.

**COUNT TWO**
**(Against Defendant IMRF)**

**Race Discrimination – Harassment - Hostile Work Environment
in Violation of The Illinois Human Rights Act**

32. Gordon repeats and realleges paragraphs 1 through 31 hereof, as if fully set forth herein.

33. During her employment, Gordon was subjected to harassment and a hostile work environment based on her race.

34. IMRF's conduct was not welcomed by Gordon.

35. IMRF's conduct was motivated by the fact that Gordon is black.

36. The conduct was so severe and pervasive as to alter the terms and conditions of Gordon's employment.

37. Gordon suffered a significant change in employment status, a forced demotion with less pay a significant change in pension benefits.

38. IMRF intentionally violated Gordon's rights under the Illinois Human Rights Act, with malice or reckless indifference.

39. Gordon suffered damages as a result IMRF's unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

40. As a direct and proximate result of IMRF's unlawful employment practices, namely the creation of a hostile work environment based on race, Gordon has suffered the indignity of discrimination, the invasion of her right to be free from discrimination and great humiliation.

## COUNT THREE
### (Against Defendant The IMRF)

**Sex Discrimination – Harassment - Hostile Work Environment
in Violation of The Illinois Human Rights Act**

41. Gordon repeats and realleges paragraphs 1 through 40 hereof, as if fully set forth herein.

42. During her employment, Gordon was subjected to harassment and a hostile work environment based on her sex.

43. IMRF's conduct was not welcomed by Gordon.

44. IMRF's conduct was motivated by the fact that Gordon is a female.

45. The conduct was so severe and pervasive as to alter the terms and conditions of Gordon's employment.

46. Gordon suffered a significant change in employment status, a forced demotion with less pay a significant change in pension benefits.

47. IMRF intentionally violated Gordon's rights under the Illinois Human Rights Act, with malice or reckless indifference.

48. Gordon suffered damages as a result IMRF's unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

49. As a direct and proximate result of IMRF's unlawful employment practices, namely the creation of a hostile work environment based on sex, Gordon has suffered the indignity of discrimination, the invasion of her right to be free from discrimination and great humiliation.

## COUNT FOUR
## (Against Defendant IMRF)

### Marital Status Discrimination
### in Violation of The Illinois Human Rights Act

50. Gordon repeats and realleges paragraphs 1 through 49 hereof, as if fully set forth herein.

51. During her employment, Gordon was subjected to harassment and a hostile work environment based on her marital status.

52. IMRF's conduct was not welcomed by Gordon.

53. IMRF's conduct was motivated by the fact that Gordon is a female.

54. The conduct was so severe and pervasive as to alter the terms and conditions of Gordon's employment.

55. Gordon suffered a significant change in employment status, a forced demotion with less pay a significant change in pension benefits.

56. IMRF intentionally violated Gordon's rights under the Illinois Human Rights Act, with malice or reckless indifference.

57. Gordon suffered damages as a result IMRF's unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

58. As a direct and proximate result of IMRF's unlawful employment practices, namely discrimination based on marital status, Gordon has suffered the indignity of discrimination, the invasion of her right to be free from discrimination and great humiliation.

## COUNT FIVE
## (Against Defendant IMRF)

### Retaliation in Violation of The Illinois Human Rights Act

59. Gordon repeats and realleges paragraphs 1 through 58 hereof, as if fully set forth herein.

60. During her employment, Gordon was subjected to retaliation based on her protected activity, complaints of unlawful discrimination.

61. IMRF's conduct, a low performance rating, was meant to discourage Gordon from asserting their rights to be free from discrimination.

62. IMRF's conduct was motivated by the fact that Gordon complained of unlawful discrimination.

63. The conduct was so severe and pervasive as to alter the terms and conditions of Gordon's employment.

64. Gordon suffered a significant change in employment status, a forced demotion with less pay a significant change in pension benefits.

65. IMRF intentionally violated Gordon's rights under the Illinois Human Rights Act, with malice or reckless indifference.

66. Gordon suffered damages as a result IMRF's unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

67. As a direct and proximate result of IMRF's unlawful employment practices, retaliation as punishment for protected activity, Gordon has suffered the indignity of discrimination, the invasion of her right to be free from discrimination and great humiliation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for her past and future loss of wages and benefits, plus interest;

C. Order Defendants to reinstate Plaintiff to a position comparable to her former position or, in lieu of reinstatement, award her front pay (including benefits);

D. Award to Plaintiff liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

E. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

F. Award to Plaintiff compensatory damages;

G. Award to Plaintiff punitive damages; and

H. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: December 13, 2021

Respectfully submitted:

PIETRUCHA LAW FIRM, LLC

*/s/ Cynthia N. Pietrucha*
Cynthia N. Pietrucha
Attorney for Plaintiff

Pietrucha Law Firm, LLC
1717 N. Naper Blvd., Suite 200
Naperville, Illinois 60563
cpietrucha@pietruchalaw.com
(630) 344-6370